IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1476 |
| | ) | |
| WILLIAM MISTICK, NURSE JUDY, | ) | Judge Schwab |
| ALBERT ZOLLER, SERGEANT DEMORE, | ) | Magistrate Judge Hay |
| OFFICER CORRADO, OFFICER R. JONES, | ) | |
| OFFICER HALEY, OFFICER WORRALL, | ) | |
| in their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | Re Dkt. [124] |

## REPORT AND RECOMMENDATION

### I. Recommendation

It is respectfully recommended that the ACJ Defendants' motion for summary judgment be granted.

### II. Report

James Edward Cole ("Plaintiff") has filed a civil rights action against seven Allegheny County Jail ("ACJ") employees (collectively, "the ACJ Defendants") and one Nurse at ACJ. Plaintiff alleged excessive force was used against him on two occasions. First, Plaintiff alleged on July 2, 2005, while a pre-trial detainee at the ACJ, Defendants Zoller and Worrall, attacked him without provocation and injured one of his knee caps. Second, Plaintiff alleged that on August 22, 2005, Defendants Mistick, Corrado, Haley, Jones and Demore attacked Plaintiff without provocation, which included the use of pepper spray on Plaintiff. After the incident, Plaintiff alleges Nurse Judy was deliberately indifferent to his alleged injuries sustained after the alleged use of excessive force on August 22, 2005. The ACJ Defendants have filed a motion for

summary judgment. Because the summary judgment record reveals no material factual dispute as to whether the force used was excessive, the ACJ Defendants are entitled to summary judgment. In the alternative, because the ACJ Defendants are all entitled to qualified immunity, summary judgment should be entered in favor of them.

A. Relevant Procedural History

Plaintiff, who at the time of instituting this civil rights action was a pre-trial detainee at the ACJ, is proceeding as a pauper. Dkt. [9]. The operative complaint is Dkt. [1]. After the close of discovery, the ACJ Defendants filed a motion for summary judgment, Dkt. [124], with attached evidentiary materials, as well as a brief in support, Dkt. [126], a pre-trial statement, Dkt. [125], and a concise statement of material facts, Dkt. [127]. Previously, Plaintiff filed his pre trial statement. Dkt. [119]. Plaintiff then filed a "response," Dkt. [130], to the summary judgment motion. However, the Court then ordered Plaintiff to file a brief in response, concise counter statement of material facts and any appendix. Dkt. [132]. It came to the attention of the Court that Plaintiff had pleaded guilty in the Court of Common Pleas Court of Allegheny County to certain crimes in connection with the events that gave rise to the present lawsuit. Accordingly, the Court then sua sponte ordered the Defendants to supply the Court with a transcript of Plaintiff's guilty plea colloquy, as well as any deposition that they had taken of Plaintiff for purposes of this suit in addition to affidavits from the ACJ Defendants. Dkt. [135]. Plaintiff then filed his response to the motion for summary judgment that had evidentiary materials attached. Dkt. [142]. Plaintiff also filed a statement of material facts. Dkt. [144]. The ACJ Defendants complied with this Court's order to electronically file certain evidentiary items, including Plaintiff's plea colloquy. Dkt. [145]. However, they did not electronically file the

transcript of Plaintiff's deposition taken for this suit. Rather, the ACJ Defendants hand delivered the copy of the Plaintiff's deposition transcript, representing that Plaintiff had not paid the fee to the court reporter to obtain such a copy. Consequently, the Court ordered that the deposition transcript be filed under seal, Dkt. [147], and it was filed at Dkt. [148].

    B. <u>Standard of Review - Motion for Summary Judgment</u>

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The moving party bears the initial burden to show or point out why there is no genuine issue of material fact. <u>Walters ex rel. Walters v. General Motors Corp.</u>, 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 587. The inquiry involves determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly

3

probative," then summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249-50.  Moreover, it is not enough for the nonmovant to show that there is some dispute as to facts, rather, "only disputes over facts that might affect the outcome of the suit will prevent summary judgment." <u>Anderson,</u> 477 U.S. at 248.

   In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.  <u>Albiero v. City of Kankakee</u>, 246 F.3d 927, 933 (7th Cir. 2001)(summary judgment is the "moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.").

   C.   <u>The Complaint and Summary Judgment Record</u>

   The operative complaint, Dkt. [1], alleged the use of excessive force by Defendants Zoller and Worrall in connection with the July 2, 2005 incident.   The court takes judicial notice[1] of the dockets of the Allegheny County Court of Common Pleas[2] which reveals the fact that in connection with the events of July 2, 2005, Plaintiff was accused of four counts of assault by a

---

   [1] In disposing of a motion for summary judgment, a court may sua sponte take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). <u>See</u>, <u>e.g.</u>, <u>In re Brooklyn Navy Yard Asbestos Litigation</u>, 971 F.2d 831, 839 (2d Cir. 1992)("any facts subject to judicial notice may be properly considered in a motion for summary judgment"); <u>St. Louis Baptist Temple, Inc. v. FDIC</u>, 605 F.2d 1169, 1171-72 (10th Cir. 1979)("a district court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial. Thus, a court may . . . take judicial notice, whether requested or not....") (citations omitted); <u>Mid-South Grizzlies v. National Football League</u>, 550 F.Supp. 558, 570 n. 31 (E.D. Pa. 1982)("Judicial notice may be used in resolving a motion for summary judgment."), <u>aff'd</u>, 720 F.2d 772 (3d Cir. 1983).

   [2] The Common Pleas docket of Plaintiff's criminal conviction for the July 2, 2005 incident, i.e., <u>Commonwealth v. James Edward Cole</u>, CP-02-CR-0012937-2005 (Allegheny County Com. Pl.), may be found at:

   http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=79647547

prisoner,[3] one count of riot-intent to commit felony,[4] one count of failure to disperse upon official order,[5] and four counts of recklessly endangering another person.[6]   Further, as a consequence of a guilty plea agreement, Plaintiff pleaded guilty to only two of the charges,  namely, one count of assault by a prisoner and one count of riot-intent to commit felony.   Assault by a prisoner is defined as

> A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth is guilty of a felony of the second degree if he, while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed intentionally or knowingly, commits an assault upon another with a deadly weapon or instrument, or by any means or force likely to produce serious bodily injury. A person is guilty of this offense if he intentionally or knowingly causes another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material when, at the time of the offense, the person knew, had reason to know, should have known or believed such fluid or material to have been obtained from an individual, including the person charged under this section, infected by a communicable disease, including, but not limited to, human immunodeficiency virus (HIV) or hepatitis B.

18 Pa. C.S. §  2703(a).  Riot with intent to commit felony is defined as

> A person is guilty of riot, a felony of the third degree, if he participates with two or more others in a course of disorderly conduct:
> > (1) with intent to commit or facilitate the commission of a felony or misdemeanor.

18 Pa. C.S. § 5501 (1).

---

[3]  18 Pa. C.S. §  2703.

[4]  18 Pa. C.S. § 5501 (1).

[5]  18 Pa. C.S. § 550.

[6]  18 Pa. C.S. § 2705.

The specific allegations against Plaintiff arising from the July 2, 2005 incident to which Plaintiff pleaded guilty were as follows:

> At the case listed at CC 200512937, it is alleged that you on or about July 2nd, 2005, intentionally or knowingly committed an assault on corrections officers Dennis Marney (phonetically spelled) with a deadly weapon while you were confined in the Allegheny County Jail. [These facts formed the basis of the plea of guilt as to the one count of assault by a prisoner.] You can go to jail for 10 years and be fined $25,000. At count five, it is alleged you participated with two or more other persons in the course of disorderly conduct with the intent to commit or facilitate the commission of a misdemeanor or felony and to coerce an official action where you would or you would incite other[s] to commit bodily injury to correction officers.

Dkt. [145-2] at 7 lines 5 to 18.

Furthermore, at the guilty plea colloquy, the prosecutor stated on the record the factual basis for the plea, i.e., the evidence, in summary form, that the prosecutor would have presented if Plaintiff had not plead guilty. Specifically, the prosecutor indicated that the evidence would establish that

> the Commonwealth would have again called Allegheny County Jail officers, who would have testified that on or about July 2nd of 2005, the defendant was involved in a riot at the jail with several other inmates. The defendant was unruly, shouting and shoving, and assaulted several jail officers.

Dkt. [145-2] at 9, lines 10 to 16.

The operative complaint, Dkt. [1], also alleged the use of excessive force by Defendants Mistick, Demore, Corrado, Jones and Haley in connection with the August 22, 2005 incident. The Court takes further judicial notice of the dockets of the Allegheny County Court of Common Pleas[7] which reveal the fact that in connection with the events of August 22, 2005, Plaintiff was

---

[7] The Common Pleas docket of Plaintiff's criminal conviction for the August 22, 2005 incident, i.e., Commonwealth v. James Edward Cole, CP-02-CR-0013542-2005 (Allegheny County Com. Pl.), may be found at:

accused of four counts of aggravated assault,[8] one count of disorderly conduct,[9] and four counts of simple assault.[10]  As a consequence of a plea deal, Plaintiff pleaded guilty to the four counts of simple assault and one count of disorderly conduct.

Simple assault is defined as:

(a) Offense defined.--A person is guilty of assault if he:
(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;
(2) negligently causes bodily injury to another with a deadly weapon;
(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or
(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

18 Pa. C.S. § 2701 (a).  Disorderly conduct is defined as

(a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(1) engages in fighting or threatening, or in violent or tumultuous behavior;
(2) makes unreasonable noise;
(3) uses obscene language, or makes an obscene gesture; or
(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa. C.S. § 5503.

---

http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=79649592

[8]  18 Pa. C.S. § 2702 (a)(3).

[9]  18 Pa. C.S. § 5503.

[10]  18 Pa. C.S.  § 2701 (a).

The specific allegations against Plaintiff arising from the August 22, 2005 incident to which Plaintiff pleaded guilty were as follows:

> on August 22nd, 2005 you attempted to cause or intentionally or knowingly caused bodily injury to Robert Jones. At count two it is alleged that you committed simple assault on John Haley (phonetically spelled). At count three the victim is Michael Pafi (phonetically spelled). At count four the victim is Bill Mistick (phonetically spelled).
> . . . .
> At count five it alleges that you, with the intent to cause substantial harm, public inconvenience or alarm, engaged in fighting, threatening or tumultuous behavior, or that you made obscene gestures or created a physically hazardous situation which served no legitimate purpose.

Dkt. [145-2] at 8, lines 1 to 19.

Furthermore, at the guilty plea colloquy, the prosecutor stated on the record the factual basis for the plea. Specifically, the prosecutor indicated that the evidence would establish that

> the Commonwealth would have called Pittsburgh Police officers and Allegheny County jail officers who would have testified on or about August 27th [sic[11]] of 2005, the defendant asked an officer to loosen his handcuffs. The officer did so, and then the defendant physically attacked the officer and three others.

Dkt. [145-2] at 9, lines 1 to 7.

Finally, the court notes that the following took place at the plea colloquy, Plaintiff stated the following to the State Court Judge:

> THE DEFENDANT: I just want to put it [i.e, the incidences] behind me. My temper got the best of me, and I apologize for my actions to all the Allegheny County Jail officers.
> THE COURT: Well, apologize to them.

---

[11] Although the transcript states the "27th" this is clearly either a typographical error on the part of the stenographer or a slip of the tongue of the prosecutor as the Common Pleas Court judge stated the date as August 22nd 2005, Dkt. [145-2] at 8, line 1, the Docket sheet has the offense date listed as "8/22/2005." Accordingly, there is no doubt that the plea colloquy concerns the events of August 22, 2005, the very events that form the basis for this civil suit.

THE DEFENDANT: I apologize for the things I put you through at the Allegheny County Jail.

Dkt. [145-2] at 10, lines 16 to 23.

    D.  <u>Discussion</u>

       1.  <u>Excessive Force Claim</u>

This court has already determined that the proper standard for Plaintiff's excessive force claims is the standard under the substantive due process clause of the Fourteenth Amendment given that Plaintiff was a pre-trial detainee. Dkt. [114] at 4 to 5.

In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992). While <u>Hudson</u> was an Eighth Amendment standards case involving convicted prisoners, that same standard applies to pre-trial detainees at least under the circumstances of this case which involve Plaintiff engaging in two prison disturbances. <u>Fuentes v. Wagner</u>, 206 F.3d 335, 347 (3d Cir. 2000)("Accordingly, we hold that the Eighth Amendment cruel and unusual punishments standards found in <u>Whitley v. Albers</u>, 475 U.S. 312 (1986) and <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992), apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance."). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. <u>Hudson</u>, 503 U.S. at 7 (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. <u>Id.</u> <u>See also</u> <u>Brooks v. Kyler</u>, 204 F.3d 102, 104 (3d Cir.

2000) (holding that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force).

The significance of the Hudson and Brooks line of cases is that they essentially did away with the traditional requirement of an objective serious deprivation and focused solely on the subjective intent of the actor. Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000)("In Hudson, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot survive without evidence that a deprivation was 'harmful enough' . . . , the latter kind of claim has no such requirement...").

The summary judgment record viewed in a light most favorable to Plaintiff reveals the following with respect to the July 2, 2005 incident, concerning which the complaint alleged the use of excessive force by Defendants Zoller and Worrall. On July 2, 2005, Plaintiff "intentionally or knowingly, commit[ted] an assault upon another with a deadly weapon or instrument, or by any means or force likely to produce serious bodily injury" and furthermore that Plaintiff "participate[ed] with two or more others in a course of disorderly conduct: (1) with intent to commit or facilitate the commission of a felony or misdemeanor." Specifically, Plaintiff

> intentionally or knowingly committed an assault on corrections officers Dennis Marney (phonetically spelled) with a deadly weapon while [he was] confined in the Allegheny County Jail.. . . . [and that he] participated with two or more other persons in the course of disorderly conduct with the intent to commit or facilitate the commission of a misdemeanor or felony and to coerce an official action where [he would . . . incite other[s] to commit bodily injury to correction officers.

Dkt. [145-2] at 7 lines 5 to 18.

The summary judgment record viewed in a light most favorable to Plaintiff reveals the following with respect to the August 22, 2005 incident, concerning which, the operative complaint, Dkt. [1], alleged the use of excessive force by Defendants Mistick, Demore, Corrado, Jones and Haley.  On August 22, 2005, Plaintiff

> attempted to cause or intentionally or knowingly caused bodily injury to Robert Jones. . . . [and he] committed simple assault on John Haley (phonetically spelled).  At count three the victim is Michael Pafi (phonetically spelled).  At count four the victim is Bill Mistick (phonetically spelled).
> . . . .
> At count five it alleges that [Plaintiff], with the intent to cause substantial harm, public inconvenience or alarm, engaged in fighting, threatening or tumultuous behavior, or that you made obscene gestures or created a physically hazardous situation which served no legitimate purpose.

Dkt. [145-2] at 8, lines 1 to 19.  More specifically, Plaintiff "asked an officer to loosen his handcuffs.  The officer did so, and then the [Plaintiff] physically attacked the officer and three others."  Dkt. [145-2] at 9, lines 1 to 7.

Plaintiff's sworn account of the July 2, and August 22, 2005 incidents in his verified complaint, Dkt. [1],  and in his response, Dkt. [142], which was also sworn to under oath, differ markedly from the facts established at the guilty plea colloquy.  However, Plaintiff is estopped from asserting in these proceedings any facts contrary to the facts established at his guilty plea colloquy.

Under Pennsylvania law, in order for a plea of guilty to be accepted by the judge, the plea must be accepted in open court and a colloquy must take place on the record.  See, e.g., Commonwealth v. Morrison, 878 A.2d 102, 107 (Pa.Super. 2005)("A valid plea colloquy must delve into six areas: 1) the nature of the charges, 2) the factual basis for the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's

power to deviate from any recommended sentence.)(citing, inter alia, Comment to Pa.R.Crim.P. 590(A)(2)). Instantly, that is what happened at Plaintiff's guilty plea colloquy; the prosecutor recited the factual basis for Plaintiff's plea and the judge stated what Plaintiff was accused of.

Under the Pennsylvania law of collateral estoppel, Plaintiff would be collaterally estopped from denying the facts of which he was accused and which formed the factual basis of Plaintiff's guilty plea, all of which Plaintiff pleaded guilty to. M.B. ex rel. T.B. v. City of Philadelphia, 128 Fed.Appx. 217, 226 (3d Cir. 2005) ("Furthermore, in Pennsylvania, 'criminal convictions are admissible in civil actions arising from the same operative facts and circumstances [and] these convictions are conclusive evidence of the criminal acts.'") (quoting Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 952 (Pa.Super. 1993)); Harsh v. Petroll, 840 A.2d 404, 444 (Pa.Cmwlth. 2003) ("Prior criminal convictions are conclusive evidence in subsequent civil actions arising out of the same incidents and concerning the same activity which was criminally prosecuted in the prior action."), appeal granted in part by, 580 Pa. 546, 862 A.2d 581 (Pa.2004), and aff'd, 584 Pa. 606, 887 A.2d 209 (Pa. 2005); 8 Standard Pennsylvania Practice 2d § 49:21 ("under Pennsylvania law, evidence of a guilty plea by an alleged perpetrator of sexual abuse against a child in foster care was admissible and entitled to preclusive effect on the issue of whether **the acts to which he admitted in his plea** were committed, in an action by the child seeking damages against a foster parent, the perpetrator, and a social services agency and its employees")(emphasis added).

Hence, because Plaintiff would be collaterally estopped from denying these facts in a Pennsylvania State Court, he is collaterally estopped from denying or otherwise controverting these facts in this Federal Court. Allen v. McCurry, 449 U.S. 90, 96 (1980); Anela v. City of

12

Wildwood, 790 F.2d 1063, 1068 (3d Cir.1986) ("The federal court, in determining the collateral estoppel effect [in a federal court case] of a state court proceeding, should apply the law of the state where the criminal proceeding took place").  Accordingly, for purposes of summary judgment, the Court deems these facts established in the plea colloquy to be uncontroverted and, indeed, uncontrovertible.  See, e.g., Marche v. Parrachak, CIV. A. 1998-CV-4219, 2000 WL 1507403, at *1 (E.D.Pa. Oct. 10, 2000)("While I view the evidence in a light most favorable to Marche on this summary judgment motion, I am also mindful that Marche has pled guilty to armed bank robbery.  In Marche's guilty plea colloquy, Assistant U.S. Attorney Robert Calo summarized the facts leading up to the bank robbery.  The plea court asked Marche if he disputed or denied the operative facts behind the plea.  As Marche stood by, his attorney answered, 'No, no.'  Marche does not now, nor could he, deny his role in the bank robbery.  Therefore, I take as true the operative facts underlying the plea . . . .") (citations omitted), aff'd 276 F.3d 578 (3d Cir. 2001) (Table).

Alternatively, the doctrine of judicial estoppel prohibits Plaintiff from controverting these facts.  "[J]udicial estoppel is a matter of federal law, not state law," unlike the applicability of collateral estoppel doctrine herein which is governed by Pennsylvania law.  Lowery v. Stovall, 92 F.3d 219, 223 n.3 (4th Cir. 1996).  The Supreme Court has explained the doctrine as follows:

> [the]  purpose [of the judicial estoppel doctrine] is "to protect the integrity of the judicial process," Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. (1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," United States v. McCaskey, 9 F.3d 368, 378 (5th Cir.  1993).  See In re Cassidy, 892 F.2d 637, 641 (7th Cir.  1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982) (judicial estoppel "protect[s] the essential integrity of the judicial process"); Scarano v. Central R. Co., 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel prevents  parties from

"playing 'fast and loose with the courts' " (quoting Stretch v. Watson, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent "improper use of judicial machinery," Konstantinidis v. Chen, 626 F.2d 933, 938 (D.C. Cir. 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks and citation omitted).

Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," Allen, 667 F.2d, at 1166; accord, Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996); Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987). Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," Edwards, 690 F.2d, at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," United States v. C.I.T. Constr. Inc., 944 F.2d 253, 259 (5th Cir. 1991), and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See Davis, 156 U.S., at 689; Philadelphia, W., & B.R. Co. v. Howard, 13 How. 307, 335-337, 14 L.Ed. 157 (1851); Scarano, 203 F.2d, at 513 (judicial estoppel forbids use of "intentional self-contradiction ... as a means of obtaining unfair advantage"). . . .

New Hampshire v. Maine, 532 U.S. 742, 749 - 51 (2001)(some citations omitted).

We find, to the extent that Plaintiff would attempt to contradict any of the factual admissions he made during his plea colloquy, all three factors of the judicial estoppel doctrine are met. See, e.g., Lowery v. Stovall, 92 F.3d 219, 224-25 (4th Cir. 1996) (giving judicial estoppel effect to a prior guilty plea to maliciously attacking an officer in a subsequent Section 1983 suit brought by the criminal defendant who alleged a Fourth Amendment unreasonable seizure claim).

First, if Plaintiff attempts to contradict herein those facts stipulated to at his plea colloquy (and below, we find that he does), he would be clearly inconsistent with the position taken in his plea colloquy and in the position he attempted to take herein.  Second, Plaintiff clearly had the State Court accept his position, i.e., accept his plea and in fact, if the State Court was not convinced by Plaintiff's plea that there was a factual basis for it, the State Court was required under State law to have rejected the guilty plea.  Commonwealth v. Maddox, 300 A.2d 503, 505 (Pa. 1973)("It is clear that before accepting a plea of guilty, the trial court must satisfy itself that there is a factual basis for the plea.");  Commonwealth v. Thompson, 448 A.2d 74, 75 (Pa.Super. 1982) ("A factual basis for the plea is universally required.");  Mayberry v. Somner, 480 F.Supp. 833, 839 (E.D.Pa. 1979)("There is an even stronger basis for concluding that Mayberry is estopped in this action. At the time Mayberry entered the plea to the charges, Pennsylvania law required that the court accepting the plea satisfy itself that there was a sufficient factual basis for it.").   Third, if we permitted Plaintiff to assert a position herein that would have contradicted his position in the plea colloquy, he clearly would have derived an unfair advantage.  It appears that in exchange for his plea, three counts of the most serious charges against Plaintiff for the July 2, 2005 incident, i.e., assault by a prisoner, were withdrawn as were four counts of recklessly endangering another and one count of failure to disperse.  It further appears that in exchange for his plea, the most serious charges of the August 22, 2005 incident, i.e., all four counts of aggravated assault were withdrawn and he was permitted to plead to four counts of simple assault and one count of disorderly conduct.  In addition, pursuant to the plea, Plaintiff received concurrent sentences for both incidents of only one to two years which ran concurrently not only with each other but with another sentence of six to twelve years.  Dkt. [145-2] at 11, lines 17 to

20.   Thus, Plaintiff received no additional periods of incarceration for these crimes of July 2, and August 22, 2005.   Accordingly, Plaintiff is judicially estopped from adopting a position herein that would contradict the facts to which he pleaded guilty at the plea colloquy.

In light of the facts conclusively established by the guilty plea colloquy, which clearly portrays Plaintiff as the instigator of violence on both dates, and in light of the fact that Plaintiff is estopped from denying that on July 2, 2005, he "committed an assault on corrections officer[]Dennis Marney ...  [and that he] participated with two or more other persons in the course of disorderly conduct with the intent to commit or facilitate the commission of a misdemeanor or felony and to coerce an official action where [he] . . . would incite other[s] to commit bodily injury to correction officers[,]" Dkt. [145-2] at 7, lines 7 to 18, the use of force by the officers as described by Plaintiff, namely the use of a crutch by Defendant Worrall to hit Plaintiff in the right knee once[12] while Defendant Zoller attempted to gain control of and/or hold Plaintiff, could not be found to be excessive by any reasonable jury considering all of the factors required under <u>Fuentes</u>, given the riotous atmosphere in the jail, the need for split second decision making on the part of  Defendants Worrall and Zoller.  This is so notwithstanding Plaintiff's claim that there was a large ratio of officers to inmates at some point in time during the riot.  <u>Cf</u>. <u>Fuentes</u>, 206 F.3d at 349 ("Here, Kleeman, Konemann and Donato were faced with Fuentes' disruptive and violent behavior for which they were not to blame. They could not take time to reason through various options to determine the most appropriate response. Rather, they

---

[12]  Plaintiff's deposition, Dkt. [148] lines 1 to 6 (indicating that Defendant Worrall struck Plaintiff's right knee once).  See Appendix, attached hereto.

had to quickly respond in order to quell the disturbance Fuentes was creating, and minimize the possibility of an escalating disruption inside the prison.").

Similarly, in light of the facts conclusively established by the guilty plea colloquy, which clearly portrays Plaintiff as the instigator of violence on both dates and in light of the fact that Plaintiff is estopped from denying that on August 22, 2005, Plaintiff "attempted to cause or intentionally or knowingly caused bodily injury to Robert Jones. . . . [and he] committed simple assault on John Haley . . . [and that the third victim was] Michael Pafi [and that the fourth victim of the simple assault was] Bill Mistick[,]" Dkt. [145-2] at 8, lines 1 to 19, and that Plaintiff, "with the intent to cause substantial harm, public inconvenience or alarm, engaged in fighting, threatening or tumultuous behavior . . . or created a physically hazardous situation which served no legitimate purpose[,]" Plaintiff is estopped from asserting, as he did in his sworn complaint, that Defendant Mistick was the initial aggressor, who without provocation choked and slapped Plaintiff. Dkt. [1] at 4, ¶¶ 23-24. Similarly, Plaintiff is estopped from asserting, as he did in his response, that "Plaintiff never complained that cuffs were too tight nor did plaintiff punch, - obviously - or kick anyone, as that would defeat the purpose of being handcuffed from behind and leg shackled." Dkt. [142] at 7. Plaintiff is further estopped from asserting, as he did in his response, that "Plaintiff once again contends that force was one way [i.e., used against him not by him] which was elaborated . . . in complaint sworn under penalties of perjury[.]" Dkt. [142] at 3, ¶ 1.[13] Given Plaintiff's description of the force used, including the use of the pepper spray, and the fact that Plaintiff instigated the need for the use of force (contrary to Plaintiff's assertions in

_____

[13] The Court notes that the documents in which both of these assertions are contained and which are squarely contradicted by his plea colloquy, were sworn to under pain of perjury.

his response and complaint) by attempting to cause bodily injury to the corrections officers and that he is estopped from asserting his version of the events wherein he alleges that he was at all times acting innocently and never provoked anyone, no reasonable jury could find for the Plaintiff on this record as to the August 22, 2005 use of force.

Accordingly, the ACJ Defendants are entitled to summary judgment as to Plaintiff's excessive force claims.[14]

### 2. Equal Protection Claim

Plaintiff also attempts to make out an Equal Protection claim. He claims he was treated differently from the other two inmates who were involved in the riot on July 2, 2005 in that they were not beaten like he was beaten and he further alleges that he was called bad words by the ACJ defendants. Dkt. [142] at 4, ¶ 7.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend.

---

[14]  To be clear, we are not holding that the mere convictions would necessarily establish that Plaintiff cannot, as a matter of law, make out a case of excessive force. Cf. Nelson v. Jashurek, 109 F.3d 142, 145 (3d Cir. 1997)(essentially reasoning that the being convicted of a crime which requires that the police officer use substantial force to effectuate the arrest, as is the case with the crime of resisting arrest, does not thereby render all the force used by the officer reasonable for Fourth Amendment purposes.   In other words there could be substantial force that is reasonable and substantial force that is unreasonable). See also Perlleshi v. County of Westchester, No. 98 CIV. 6927, 2000 WL 554294, at *5 (S.D.N.Y. April 24, 2000)("The fact that Perlleshi has admitted to resisting arrest is not automatically dispositive of his claim that Repicky's conduct constituted excessive force. The specific issue before the Court on the excessive force claim, is whether Repicky-who admits to throwing at least one punch at Perlleshi-engaged in more force than was necessary, under the 'objective reasonableness test,' to subdue Perlleshi and effect the arrest.").   It is not the mere fact of Plaintiff's convictions, rather, it is the underlying facts of those convictions as evidenced by the plea colloquy that provides a basis for estopping the Plaintiff from denying specific facts he admitted to at the guilty plea colloquy and those very same facts he admitted which we must take as true, render it impossible for a rational jury to find for Plaintiff on his excessive force claims, given that Plaintiff's version of the events herein are almost wholly contradicted by the facts of his plea colloquy and this is so, even considering the evidence which he presents which is not controverted by the facts of his plea colloquy.

XIV, § 1.   In order "[t]o state an equal protection claim, plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person."  Sabatini v. Reinstein, No. 99-2393, 1999 WL 636667, at 4-5 (E.D. Pa. Aug. 20, 1999). See also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995).

Plaintiff utterly fails to carry his burden to show that the two other inmates who were allegedly involved in the July 2, 2005 riot were, in fact, similarly situated to Plaintiff.  In fact, although Plaintiff points out that Claron Hanner was, like Plaintiff, charged in connection with the July 2, 2005 incident, his charges, unlike Plaintiff, were ultimately nolle prossed.[15]  Plaintiff offers no evidence that in fact, his actions and the actions of Claron Hanner were such that the force required to subdue Plaintiff was also required as to Claron Hanner.  Hence, any difference in the treatment between the two, on this record, may be justified by the fact that they were not similarly situated.  In any event the record is silent as to what Claron did on that date and a silent record redounds to the detriment of Plaintiff who bears the burden to show that he and Claron were similarly situated.[16]

---

[15]  The court takes judicial notice of the criminal dockets involving Mr. Hanner: Commonwealth v. Hanner, CP-02-CR-0012929-2005 (Allegheny County CCP) available at

http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=79647536

[16]  Logan v. Liberty Healthcare Corp., 416 F.3d 877, 882 (8th Cir. 2005) (stating that "it is a plaintiff's burden to produce specific, tangible evidence showing a disparity in the treatment of similarly situated" persons) (internal citations and punctuation omitted);  Dahlsten v. Lee, 531 F.Supp.2d 1029, 1043 (N.D.Iowa, 2008) ("A plaintiff bears the burden of proving that he is similarly situated to those whom he compares himself to 'in all relevant respects.'");  Ganley v. Minneapolis Park

As for the second inmate, i.e., Mark Robert Nixon, Plaintiff does not even establish that Mr. Nixon was charged with any crimes for the July 2, 2005 riot. In his response, Plaintiff cites to a Common Pleas Docket No. CC 2005-01377. Dkt. [142] at 9. The Court takes judicial notice of the criminal dockets of Allegheny County Court of Common Pleas and those dockets reveal that the case of <u>Commonwealth v. Mark Robert Nixon</u>, CP-02-CR-0001377-2005,[17] is a case that involves charges of aggravated assault and firearms violations for an offense that took place on September 14, 2004. Hence, Plaintiff has failed to establish that the other inmate allegedly involved in the riot, namely Mark Nixon, was even charged with crimes as was Plaintiff, which would lead to the inference that Mr. Nixon and Plaintiff were not similarly situated. However, even if Plaintiff has the wrong Mr. Nixon or the wrong case number and he could establish that the second inmate was charged for the July 2, 2005 riot, just like Plaintiff failed above to show that Mr. Hanner behaved similarly to Plaintiff so as to require a similar use of force against Hanner, Plaintiff also fails to show that Mr. Nixon behaved in such a manner as to require the use of force against him that was required to be used against Plaintiff. Given that it is Plaintiff's burden to establish that he was similarly situated with the other two individuals, and there is no evidence that they were similarly situated with Plaintiff, the equal protection claim fails.

_____

and Recreation Bd., Civil File No. 05-2135, 2006 WL 2671295, at *3 (D.Minn. Sept. 18, 2006)("A plaintiff bears the burden of proving that he is similarly situated to those whom he compares himself to 'in all relevant respects.'").

[17] The docket for Mr. Nixon's criminal case is available at

http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=79617847

As for the calling of Plaintiff bad words, including the alleged use of racial epithets, the only allegation of such in the complaint is that Defendant Mistick made such remarks and that these remarks were made before any physical altercation had taken place, i.e., before Plaintiff initiated the assaults on the guards. <u>See</u> Dkt. [1] at 3, ¶¶ 18 to 20. However, the mere use of such racial epithets, as profoundly offensive to human sensibilities as they are, simply does not violate Plaintiff's equal protection rights. <u>Lee v. Mackay</u>, 29 Fed.Appx.679 (2d Cir. 2002) (racial epithets, alone, are insufficient to support equal protection claim); <u>Shabazz v. Cole</u>, 69 F.Supp.2d 177, 201 (D. Mass. 1999)("the weight of authority is that verbal threats, even abusive threats with racial epithets, do not, in the context of prison, violate an inmate's constitutional rights. 'Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.'"); <u>Bradshaw v. Clements</u>, No. CIV. 99-6029-ST, 2000 WL 157903, at *5 (D.Or. Feb. 8, 2000) (Equal Protection Clause based on racial slurs does not state cognizable constitutional claim).

### 3. First Amendment Denial of Access to Courts Claim

Plaintiff also attempts to make out a First Amendment denial of access to courts claim. Dkt. [142] at 9, ¶ 3 (alleging that he was intimidated from filing grievances which could prevent him from filing lawsuits because the Prison Litigation Reform Act requires that he exhaust his administrative remedies prior to filing suit in federal court). There are at least two failings in this claim. First, even if Plaintiff were dissuaded from filing grievances, such would not cause him to lose his right to file a federal civil suit and, hence, no First Amendment denial of access to the courts could be established because the Federal Courts excuse exhaustion under such a scenario. <u>Thomas v. Prator</u>, 172 Fed.Appx. 602, 603 (5th Cir. 2006)("While we have recognized that the

exhaustion requirement may be excused where administrative remedies are inadequate because prison officials ignore or interfere with a prisoner's pursuit of relief, <u>Holloway v. Gunnell</u>, 685 F.2d 150, 154 (5th Cir. 1982), the evidence does not support such a conclusion in Thomas's case."); <u>Veloz v. New York</u>, 339 F.Supp.2d 505, 515-16 (S.D.N.Y. 2004) ("When an inmate's reasonable attempts to exhaust available administrative remedies are impeded by a correctional officer, the remedy may be deemed unavailable, thereby excusing the inmate from technically exhausting his remedies. ").  Second, the rule is that in order to make a First Amendment claim of being denied access to the courts, Plaintiff must adduce evidence that he was caused an actual injury, i.e., that he lost a suit or could not bring a suit.  <u>See</u>, <u>e.g.</u>, <u>Toussaint v. Good</u>, 276 Fed. Appx. 122, 124 (3d Cir. 2008)("As to Toussaint's First Amendment claim regarding the denial of access to the courts, we agree with the Magistrate Judge's determination that Toussaint alleged no actual injury under <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996). We note that Toussaint clarified in his objections to the report and recommendation that he was impeded in filing a motion for bail pending appeal in this Court. Yet Toussaint still alleged no specific facts regarding this alleged harm; he provided no case numbers, dates of attempted filing, or details describing how his litigation was affected.").  Plaintiff has utterly failed to adduce any evidence of such an injury as is his burden.[18]   Hence, the ACJ Defendants are entitled to summary judgment as to Plaintiff's first amendment claim.

---

[18] <u>McIlweine v. Harris</u>, C/A No. 4:07-1117, 2008 WL 2909358, at *11 (D.S.C. July 22, 2008)("Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Plaintiff has failed to meet this burden in that he has not alleged or shown that he has suffered any actual injury as a result of the LCDC not having a law library.").

4. <u>Conspiracy Claim</u>

Lastly, Plaintiff attempts to allege that the Defendants all engaged in a conspiracy to cover up the fact that they had engaged in excessive force against Plaintiff.  Given that we have already concluded that Plaintiff is estopped from establishing that the Defendants engaged in excessive force, he is consequently incapable of establishing a conspiracy under Section 1983 to cover up a non-existent wrong. <u>Cf.</u>  <u>In re Orthopedic Bone Screw Products Liability Litigation</u>, 193 F.3d 781, 789 (3d Cir. 1999)("The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor. Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort.  Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.")(internal citations and quotations omitted); <u>Halberstam v. Welch</u>, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy [i.e., the agreement] is not independently actionable"). For this reason alone, the ACJ Defendants are entitled to summary judgment on the conspiracy claim.

Alternatively, even if Plaintiff had established that the ACJ Defendants engaged in excessive force, Plaintiff fails to establish that a conspiracy after the fact deprived him of any

federal constitutional right.  What the court stated in <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1332 -

33 (11th Cir. 2008), applies equally here:

> Hadley fails to explain what constitutional right the alleged cover-up
> infringed. We can imagine some possibilities. Covering up the use of excessive
> force may hinder a criminal defendant's access to the courts to redress a
> constitutional violation,[19] a right protected by several constitutional provisions.
> <u>See</u> <u>Chappell v. Rich</u>, 340 F.3d 1279, 1282-83 (11th Cir. 2003) (right secured by
> Article IV's Privileges and Immunities Clause, First Amendment, Fifth
> Amendment, and Fourteenth Amendment). Or, the cover-up may prevent
> exculpatory or impeaching evidence from reaching the desk of the state
> prosecutor, a denial of the defendant's due process rights under the Fourteenth
> Amendment. <u>See</u> <u>McMillian v. Johnson</u>, 88 F.3d 1554, 1567-68 (11th Cir. 1996).
> Hadley does not contend that the alleged cover-up prevented him from seeking
> redress for a constitutional violation, or that the cover-up denied the state
> prosecutor access to exculpatory or impeaching evidence.
> Hadley has the burden to show an actual denial of his constitutional rights
> underlying the cover-up conspiracy. It is not our job to divine a constitutional
> violation to support Hadley's conspiracy claim. We are left completely in the dark
> about the constitutional basis for the claim. His complaint contains no explanation
> of which rights protected by the Fourteenth Amendment were infringed. . . . .
> Hadley has wholly failed to establish a constitutional basis for asserting a
> conspiracy claim sufficient to withstand summary judgment.

Based upon the foregoing reasoning, the ACJ Defendants are entitled to summary judgment as to

the conspiracy claim.[20]

---

[19]  Clearly, Plaintiff has not been denied access to court with respect to his claims arising out of
the August 22, 2005 incident.  He has fully litigated the claim of excessive force in this proceeding and
he has simply been incapable of establishing that the ACJ Defendants utilized excessive force in this case
because he is estopped from presenting his version of the events that almost wholly contradict the version
of the events that he admitted to and to which he pleaded guilty at his plea colloquy.

[20]  To the extent that any one of the grounds relied upon in this report to recommend the grant of
summary judgment was not raised by the ACJ Defendants, the court has power to sua sponte grant
summary judgment so long as the losing party has notice and an opportunity to be heard.   <u>Canell v.
Bradshaw</u>, 97 F.3d 1458 (Table), 1996 WL 547978 at **5 (9th Cir. 1996) (unpublished)("A district court
may grant summary judgment to a non-moving party sua sponte so long as the other party has had an
adequate opportunity to address the relevant issues.").  <u>See also</u> <u>Celotex</u>, 477 U.S. at 326 ("Our
conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to
enter summary judgments sua sponte, so long as the losing party was on notice that she had to come
forward with all of her evidence.").  This report and recommendation can serve as the necessary notice;

5. Qualified Immunity

In the alternative, even if a reasonable jury could conclude from the evidence presented that Plaintiff's claimed constitutional rights were violated, we find that notwithstanding this, under the peculiar facts of this case, the ACJ Defendants would all be entitled to qualified immunity.   While Plaintiff sought both injunctive and/or declaratory relief and damages, Dkt. [1] at 7, ¶ V, because he has long ago been transferred out of the ACJ,[21] any such claims for injunctive relief and/or declaratory relief are moot.[22]  Hence, the qualified immunity defense would render summary judgment proper and would completely dispose of the case as against the ACJ Defendants given that only money damages would remain.

A "government official is entitled to qualified immunity if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000).  In "order to survive

---

and the opportunity to object, provides Plaintiff with the opportunity to present any further evidence he may have with respect to the dispositive issues. Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) ("Here, the Magistrate Judge's Memorandum and Recommendation placed Magouirk on notice that procedural default was a potentially dispositive issue with respect to three of his claims.  Magouirk responded to the Magistrate Judge's sua sponte invocation of procedural default within the ten-day time period allowed for filing objections to the report.  Thus, Magouirk was afforded both notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court."); Canady v. Baker, 142 F.3d 432 (Table), 1998 WL 123996, *1 (6th Cir. 1998)(same).

[21] Dkt. [12] (notice of change of address to a state prison, filed on April 27, 2006, nearly three years ago).

[22] The "rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). Where a plaintiff seeks injunctive relief for prison conditions that he can no longer be subject to, there is no longer a live controversy and a court cannot grant that injunctive relief.  See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993);  Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa. 1998)("Fortes' [i.e., the inmate] transfer to another institution moots any claims for injunctive or declaratory relief."); Marrie v. Nickels, 70 F.Supp.2d 1252, 1259 (D.Kan. 1999) ("Generally, an inmate's transfer to another prison or release moots his request for declaratory or injunctive relief.") (collecting cases).

summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" <u>Abdullahi v. City of Madison</u>, 423 F.3d 763, 775 (7th Cir. 2005) (<u>quoting</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001)).[23]

Although in the preceding analysis, the Court determined that the Defendants did not violate Plaintiff's constitutional rights (or more properly, there is no material factual dispute over this), even if, for the sake of argument, the Court assumed such actions on the part of the Defendants did violate Plaintiff's constitutional rights, Defendants would still be entitled to summary judgment on the basis of qualified immunity because it would not have been clear to a reasonable officer that their actions violated Plaintiff's constitutional rights. This is especially true of Plaintiff's excessive force claims given Plaintiff's actions, which reasonable officers could have perceived as requiring the amount of force that the summary judgment record reveals was utilized. Hence, as an alternative holding, the ACJ Defendants are entitled to qualified immunity for all their actions.

Accordingly, the ACJ Defendants are entitled to summary judgment on all of the federal law claims either because Plaintiff has failed to carry his burden to show a genuine issue of material fact as to whether the ACJ Defendants violated any of his rights or because the record conclusively demonstrates that under the facts of this case, the ACJ Defendants would all be entitled to qualified immunity.

---

[23] Recently, the Supreme Court receded from the qualified immunity rule in <u>Saucier v. Katz</u>, that required the courts to first determine whether a constitutional violation occurred and only then proceed to determine if it would have been clear to a reasonable person that their actions violated clearly established law. <u>Pearson v. Callahan</u>, __ U.S. __, 129 S.Ct. 808 (Jan. 21, 2009).

6. <u>State Law Claims</u>

Lastly, Plaintiff invokes the Court's supplemental jurisdiction over state law claims of "assault and battery" against the ACJ Defendants. Dkt. [1] at 7, ¶¶ 40-41. However, the Court finds that what was decided above concerning Plaintiff being estopped from denying that he engaged in assaults on the ACJ defendants applies with equal force to the state law tort claims. In light of Plaintiff's assaults on the guards on both dates and the underlying facts to which he pleaded guilty and which he cannot now contradict, the physical contacts and use of force by the ACJ Defendants, which form the basis of Plaintiff's state law claims under Pennsylvania tort law, were privileged and hence, could not be a ground for liability and, therefore, the ACJ Defendants are entitled to summary judgment as to the state law claims of assault and battery. <u>Picariello v. Fenton</u>, 491 F.Supp. 1026 (M.D.Pa. 1980). In other words, the ACJ defendants were privileged under the law to utilize the force they used given Plaintiff's creation of the prison disturbances and the need for gaining control of him.

In so finding, the court relies upon the following reasoning of the <u>Picariello</u> Court, which held that:

> These acts, however, while perhaps offensive to the Plaintiffs, were not batteries. The incidental and necessary touchings by correctional officers of inmates in the performance of their duties are not batteries, but are privileged contacts. Restatement (Second) of Torts s 132, Comment b (1965); <u>see</u> <u>Kedra v. City of Philadelphia</u>, 454 F.Supp. 652, 673 n. 22 (E.D.Pa.1978).
>
> With respect to Plaintiffs Picariello and Sheeley, the Court is of the view that the technical assaults and batteries committed upon them in removing them from Room 1 and placing them face down on the floor in Room 2 were privileged. Plaintiffs do not argue that every offensive touching of an inmate is a battery or that a reasonable apprehension of such a touching is an assault. They recognize that officials charged with the custody of prisoners are privileged to use force which is reasonable under the circumstances to maintain control of their charges.

27

> Plaintiffs argue, however, that the placement of Picariello and Sheeley on the floor face down while in restraints was unnecessary and, therefore, not privileged.
>
> The Court is unable to accept that conclusion. Both Picariello and Sheeley refused to obey reasonable orders in Room 1. Both resisted their removal from Room 1 to Room 2. While by hindsight the Court has the luxury of knowing that in fact no disturbance occurred that night at Lewisburg, Fenton's decision to place disruptive inmates on the floor in Room 2 was reasonable. It eliminated the need either thoroughly to search prisoners who were just prior to their removal from Room 1 unruly before placing them in cells or to place them in a holding area outside Room 2 under the supervision of one or more guards. That, in addition to taking more time, would have reduced the number of officers present in Room 2. Although placement on the floor in the positions assumed by Picariello and Sheeley was uncomfortable, the Court is of the view that it was not so uncomfortable as to make the conduct of Hudson who actually ordered that they be placed face down and of Fenton unreasonable and therefore a battery.

Id., at 1038.   Similarly here, the summary judgment record establishes that no reasonable jury could find for Plaintiff on the state law torts of assault and battery in view of the facts conclusively established by his convictions and judicial admissions at his plea colloquy, which establish that the force used by the ACJ Defendants was reasonable and, hence, privileged.

Because the ACJ Defendants are entitled to summary judgment as to all of the claims made against them, they should be dismissed as party defendants.

III.     Conclusion

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute waiver of any appellate rights.


Respectfully submitted,

/s/  *Amy Reynolds Hay*
                                   United States Magistrate Judge


Dated: 4 March, 2009

cc:      The Honorable Arthur S. Schwab
         United States District Judge

         James Cole
         GP-5404
         SCI  Rockview
         Box A
         Bellefonte, PA 16823-0820